UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED MARINE MARKETING GROUP, LLC**

    **Plaintiff,**

v.                                **Case No. 8:10-cv-02653-T-30TBM**

**JET DOCK SYSTEMS, INC., OCEAN INNOVATIONS, INC., W. ALLAN EVA, III, and DAVID T. FABER,**

    **Defendants.**
_____/

## ORDER

THIS CAUSE comes before the Court upon Defendants' Motion to Dismiss (Dkt. 12), Plaintiff's Response (Dkt. 19), Defendants' Reply (Dkt. 22), and Plaintiff's Surreply (Dkt. 27). The Court, having reviewed the motion, response, replies, and being otherwise advised in the premises, concludes that Defendants' motion should be granted.

## BACKGROUND

Plaintiff United Marine Marketing Group, LLC ("UMMG") is a distributor of docks and accessories. Defendants manufacture and sell a number of patented dock products. Plaintiff UMMG brings this action alleging an "actual dispute" with Defendants; specifically, UMMG is concerned that Defendants may initiate judicial action against UMMG should it produce, and/or sell various floating dock products, particularly floating "drive-on" docks.

Accordingly, UMMG petitions this Court for declaratory relief, asking this Court to declare that: (1) the five relevant patents held by Defendants be declared invalid; (2) the five relevant patents held by Defendants be declared to be unenforceable, and; (3) the five relevant patents held by Defendants be declared not to infringe UMMG's dock products. In addition to these fifteen patent counts, UMMG brings three further counts alleging that Defendants have engaged in unfair competition in violation of both federal and state law. Defendants move to dismiss the action for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1), on the grounds that UMMG has failed to adequately plead a case or controversy.

Defendants' floating "drive-on" docks, as their name implies, allows the user of a personal, and/or commercial watercraft to drive up onto a dock directly from the water. This allows the craft to be easily stored "high and dry," better protecting and preserving the machinery of the vehicle.

This "drive on" capability is made possible by Defendants' "differential flexing" technology, which enables a floating dock to bend down slightly, like a bow, whenever a craft attempts to ascend the dock. In effect, this "differential flexing" ability creates a ramp, lowering a portion of the dock into the water when the watercraft approaches. Once the craft reaches the top of the dock, the ramp "snaps" back into place, keeping the craft and the entire dock high and dry.

Importantly, the ability of the dock to "snap" back into place keeps the entire top surface area of the dock above the water line both before and after ingress and egress. This

prevents barnacles and other harmful marine life from forming on the dock, better preserving both the dock and any vehicles stored on the dock.

Defendants allege that prior attempts to create such "drive on docks" were less than successful in accomplishing the twin goals of: (1) enabling an individual to easily drive onto the dock, and; (2) ensuring that both the dock and the vehicle are stored above the water line. According to Defendants, such docks were either too high above the water to enable a watercraft to ascend the dock, or too low to keep the driver and the craft out of the water entirely, preventing storage of the craft above the water line.

Defendants' docks described above are constructed out of various components. For example, one of the Defendants' patented floats is constructed out of, *inter alia,* "tall" and "short" hollow, air-tight float units.[1] While Defendants' floats are assembled out of various components, the production and selling of these individual *components* is not at issue in this case. On the contrary, this case concerns Defendants' patents of finished dock products; specifically, particular *configurations* of these dock components which meet certain specifications or claims.

As adumbrated above, UMMG brings this action alleging an "actual dispute" concerning its right to produce, and/or sell particular docks that may infringe one or more of Defendants' patented dock designs. Specifically, UMMG alleges that there is an "actual dispute" concerning UMMG's right to produce and, and/or sell any floats: (1) assembled

---

[1] "Tall" units are roughly cubical in shape, and are significantly larger than "short" units.

with one or more "double float" components, (2) composed of "tall" floats and "V-floats,"[2] and; (3) assembled with all "tall" floats.

## DISCUSSION

### I. Subject Matter Jurisdiction Under the Declaratory Judgment Act

The Declaratory Judgment Act states that: "[i]n a case of actual controversy within its jurisdiction" a federal court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Although the Act cannot serve as an independent ground for subject matter jurisdiction, the required source of jurisdiction is supplied here, and in other patent actions, by 28 U.S.C. sec § 1338(a). Importantly, under the terms of the Act an individual can only sue for declaratory relief upon involvement in a "case of actual controversy." 28 U.S.C. § 2201(a). This requirement of an actual dispute simply re-affirms the limitation on federal jurisdiction contained in the United States Constitution, which mandates that federal courts only hear "cases" or "controversies." U.S. Const. art III, § 2; *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008). Under Article III, a case or controversy exists if the dispute is "definite and concrete, touch[es] the legal relations of parties having adverse legal interests," is "real and substantial," and admits of "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v.*

---

[2] A "V-float" unit is, roughly, a float component with a "V-shaped" portion cut out of the top of the float.

*Genentech, Inc.,* 549 U.S. 118, 127 (2007).

If a Court finds an absence of a "case or controversy" in a declaratory judgment action, the Court *must* dismiss the case for lack of subject-matter jurisdiction in accordance with its Constitutional responsibilities. *Cat Tech LLC,* 528 F.3d at 883. If, on the other hand, a Court in a declaratory judgment action concludes that a case or controversy does exist, it has discretion whether to hear the case. *Id.* at 883.

Finally, in determining whether there is a "case or controversy" in deciding a motion to dismiss on the pleadings, the Court must take the facts alleged in the Complaint as true. *See, e.g., Carmichael v. Kellogg, Brown & Root Servs., Inc.,* 572 F.3d 1271, 1279 (11th Cir. 2009).

## II.     Patent Declaratory Judgment Counts

Plaintiff UMMG contends that an "actual dispute" exists between UMMG and Defendants over whether UMMG may produce and sell certain floating dock products. Specifically, UMMG asserts that this case involves an "actual dispute" over its right to produce and sell: (1) docks composed of one or more "double floats;" (2) docks composed of "tall" and "V floats," and; (3) docks composed of all "tall" floats. Plaintiff contends that this alleged "actual dispute" shows a case or controversy under both the Declaratory Judgment Act and Article III of the United States Constitution.

This Court disagrees, and concludes that UMMG has failed to adequately plead a "case or controversy." Although UMMG contends that they are involved in an "actual dispute" with Defendants concerning whether or not they can produce, and/or sell certain

floating docks, UMMG fails to identify *even a single dock product* which they wish to produce, and/or sell. As a result, there is nothing for a case or controversy to be about.

Instead of describing or otherwise identifying even a single product that it intends to sell UMMG: (1) lists various floating dock *components* that UMMG produces, such as "double floats," "tall" floats, and "V-floats," (2) states that they intend to assemble these components into floating docks, and (3) asks the Court for its opinion on whether these finished dock products will infringe Defendants' patents.

While UMMG identifies certain dock *components* which it intends to assemble into finished docks, these dock components are not at issue in this case. Indeed, UMMG is free to sell these individual components to whoever they choose without risk of infringing Defendants' five patents. On the contrary, the relevant patents in the instant case relate to finished dock products, or *specific configurations of components* which meet the various claims contained in Defendants' patents.

Without knowing what configurations it wants to sell, this Court simply has no way of determining whether the hypothetical docks UMMG plans to build will infringe Defendants' patents.[3] Indeed, UMMG's individual dock components can be assembled in a virtually infinite number of ways. While some configurations of these dock components

---

[3]The vast majority of the claims contained in Defendants' patents are of the "open ended" variety. Importantly, such claims do not exclude the possibility of additional elements. If UMMG were to build a dock meeting every limitation of one of Defendants' patented docks, and then went on to add additional elements (for example, "V-shaped" floatation units), the finished dock product would still infringe. Hence, the fact that UMMG tells the Court that it intends to build its docks with certain components tells this Court little.

will not infringe Defendants' patents, others may. Without being apprised of the product at issue the Court simply cannot say.

Plaintiff UMMG appears to be asking this Court to serve as its private counsel, asking the Court for its advice on how to design a non-infringing dock product given the particular components at UMMG's disposal. As federal courts only possess the authority to decide disputes which are "definite" and "concrete," this Court must accordingly decline to dispense such advice. *Cat Tech LLC,* 528 F.3d at 881; (a plaintiff cannot "obtain a declaratory judgment merely because it would like an advisory opinion on whether it would be liable for patent infringement if it were to initiate some merely contemplated activity." (quoting *Arrowhead Indus. Water, Inc. V. Ecolochem, Inc.,* 846 F.2d 731, 736 (Fed.Cir.1988))).

In sum, because UMMG has failed to properly describe or otherwise identify the product which the alleged dispute is about, the Court concludes that UMMG has failed to properly plead the existence of a case or controversy as required by the Declaratory Judgment Act and the U.S. Constitution. As a result, UMMG lacks standing to petition this Court for declaratory relief, and the Court must accordingly dismiss those counts for lack of subject-matter jurisdiction.

### III.   Unfair Competition Counts

The Court concludes that the three remaining unfair competition counts should also be dismissed. First, these counts improperly utilize a "shotgun pleading" method condemned by the Eleventh Circuit and Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff's "shotgun pleading" makes it tedious for the Court to determine the veracity of the

claims against Defendants because each count incorporates the preceding paragraphs, including much that is irrelevant and immaterial. *See, e.g., Pelletier v. Zweifel,* 921 F.2d 1465, 1518 (11th Cir. 1991) ("Anyone schooled in the law who reads these [shotgun pleading] complaints...[] would know that many of the facts alleged could not possibly be material to all of the counts. Consequently, [the opposing party] and the district court [have] to sift through the facts presented and decide for themselves which [are] material to the particular cause of action asserted, a difficult and laborious task indeed.") Such defective pleading alone provides sufficient reason for the Court to dismiss these three counts of unfair competition.

Second, the only possible alleged facts contained *in the Complaint* which might support these counts are certain allegations that Defendants engaged in behavior designed to enforce their patent rights, by, *inter alia,* telling potential customers not to buy infringing products, and suing others thought to have infringed their patents. Such acts are perfectly legal assuming that Defendants' patents are valid. Thus, these claims for unfair competition rise and fall with the patent claims. As UMMG has failed to sufficiently plead standing to assert their patent claims in this Court, the claims for unfair competition should also be dismissed.

For the above reasons, the Court concludes that the unfair competition counts should also be dismissed. Moreover, if Plaintiff UMMG repleads its complaint it should make sure to comply with the Eleventh Circuit's case law on shotgun pleadings with respect to all counts in said complaint.

It is therefore **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss (Dkt. 12) is hereby GRANTED.

2. Plaintiff UMMG may replead its complaint within twenty (20) days from the date of this Order.

**DONE** and **ORDERED** in Tampa, Florida on September 6, 2011.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

S:\Odd\2010\10-cv-2653.mtd12.wpd